Alright, please be seated. Good afternoon everybody. The next case called for oral argument is Midland Fund, LLC v. Raney. Counsel, whenever you're ready, you may proceed. Excuse me. May it please the court. Midland Funding is here today to ask this court to reverse the decisions of the underlying court denying the motion to compel arbitration and striking the exhibits that Midland provided in support of that motion to compel arbitration. The preliminary issue for this court is what standard of review applies. Pursuant to cases such as Hollingshead and Hubert v. Dell, it's a de novo standard of review in this instance, where you are determining a motion to compel arbitration. As well, Hubert v. Dell provides that motions to strike exhibits are also subject to a de novo standard of review when coupled with a motion to compel arbitration. And it's subject to a de novo standard of review because no evidentiary hearing was held in this case. There was no live witnesses. There was no credibility determinations of live witnesses. Instead, this court has the same information that the underlying court has. You have the declaration of Michael Berger. You have his deposition. You have the exhibits attached to Mr. Berger's declaration to make your determination. So this court can apply a de novo standard of review. The first issue after the standard of review is whether the court inappropriately struck the exhibits that we provided in support of our motion to compel arbitration. And the court there found that it was not appropriate, that the exhibits were not admissible because they were not supported by sufficient foundation and they were improper hearsay because Mr. Berger, the declarant, did not work for Citibank, where most of these documents are derived from, and he did not have sufficient personal knowledge. This was error. This was error because Rule 236 expressly provides that when there is a lack of personal knowledge, it goes to the weight of the business record and not the admissibility of it. So the court erred by striking the exhibit entirely. Further, you do not need to, for business records, as this court is well aware, you do not need to be the author or involved in the creation of the documents, which is the implication that the circuit court was relying on here because Mr. Berger didn't have sufficient personal knowledge. What you need to satisfy the business records exception of the hearsay rule is the person, the declarant, needs to know the business and the mode of operations. And here Mr. Berger provided that information because he knows how the documents are received from a company like Citibank, the original creditor, and then processed by Midland into its database in order to serve the account, service the account, and then it is required also to upload documents into its portal. So Mr. Berger testified explicitly with regard to that process. What the problems that appellees have is that Mr. Berger was not employed by Citibank, and these documents do come from Citibank. However, Illinois courts recognize that business records from third parties are still admissible when a company like Midland incorporates and relies upon those documents in its ongoing business. And that's exactly what Mr. Berger testified to is what I just explained to you. They upload the documents from Citibank and use those documents in its regular course of business. And allowing the third party records to come in under the hearsay rule is not inconsistent with the business records exception. In fact, it's entirely consistent because what we have is a situation where the business records exception exists because of the accuracy that business needs for its business records. And that accuracy exists because without that accuracy, a business would not be successful. It needs its business records to be successful in order to be successful. And therefore, allowing the third party business records of Citibank to come in is not counter to the business records exception to the hearsay rule. And this exception applies equally to all types of documents, not just the bill of sale and the affidavit of sale that we received, but also the account statements and the other account information that we received in an Excel file that could be deemed computer records, right? So all of those records that we received from the business are also trustworthy. And we get cases that you want to cite to as far as the situation we've got in this case. Right, exactly. Okay, and so the courts have recognized that in the medical context, Solis versus BASF, a doctor was allowed to introduce an exhibit that was from a third party because he relied on that document in the course of treating his patient. Then you have EastWest Logistics. Sorry if I don't have the full name off the top of my head. It's EastWest Logistics, Bank of America versus land from this district as well, where it's in the financing sector, where you're dealing with loan agreements or mortgage servicing agreements. And the parties and the affiance there were not necessarily part of the original transaction where a loan was given or a mortgage was given. However, over the course of time, as it happens in business, it was sold to a different entity. And they needed to rely on those records from the original creditor, just like here, we relied on Citibank, to be able to continue to service and work that loan or mortgage. And finally, there was one further indicia of trustworthiness that Citibank provided here. In its bill of sale, it represented and warranted that the documents were accurately put into its database, not its documents. The information with regard to the account were accurately put into its database. It was made in the regular course of business. It was made at or near the time that the events occurred, and it was kept in the regular course of business. So the parties foresaw the situation, and we got extra assurances to ensure the accuracy of the business records of Citibank. Counsel, was there an issue in this case regarding the signatures of the Rainey's? Did they have an agreement in that sense that the Rainey's actually signed the document? Right. So that goes to whether there is an enforceable agreement, I think is where you're going with that. And so there is not necessary in the credit card agreement context to have a signed document. Credit card agreements are unique in that sense. And one of the things that this court may need to decide is, let me take a step back. In determining whether a credit card agreement exists, it depends on whether that credit card was used. Not necessarily whether there was a signature or anything to that extent. Rather, it depends on whether that card was used. And that's cases like Garber and Portfolio. Portfolio that set forth that a credit card agreement doesn't exist within the confines of one document. An original creditor, such as Citibank, extends credit pursuant to certain terms and conditions. And that agreement is not accepted until there is usage. And here, in this case, both Ms. Rainey and Ms. Darnell accepted the terms and conditions of the card agreement by using the cards after they were notified of the card agreement. So to answer your question more directly, you do not need a signature in order to have a valid credit card agreement. And that is another way that the circuit court erred in finding that there was no enforceable agreement. But before that, in addition to the evidentiary issues that I was discussing, the circuit court also erred by not addressing the delegation clause that agrees in the arbitration agreement. The circuit court didn't even need to get to the enforceability of the card agreement and determine whether a signature was necessary or things like that. Because under the card agreement here, issues of enforceability were to be determined by the arbitrator. Typically, issues of enforceability are left for the courts. But the parties can agree to allow those types of gateway issues to be cited by the arbitrator if it is clear and unmistakable in their agreement. And here, the card agreement is clear and unmistakable. It provides that claims regarding the enforceability of the card agreement are subject to arbitration. And pursuant to a delegation clause, that means that the court didn't need to address the enforceability issue and should have compelled it to arbitration initially. And here, too, for this court, this court's decision only needs to be, this court can, if this court decides that a delegation clause does apply, the court can end its analysis at that point and remand with instructions to compel arbitration. Because if enforceability is to be decided by the arbitrator, this court doesn't need to decide enforceability, nor does it need to decide the issue of waiver. So once this court decides there is the existence of an agreement, which is the evidentiary issues I first discussed, it only needs to decide the delegation issue to determine whether this case should go to the arbitrator or not. And that presumption in favor of arbitration is well established in both U.S. Supreme Court case law as well as Illinois case law. Counsel, if I may ask you about the arbitration, I think Rainey's argument in the briefs is the arbitration clause was waived by their client, basically by their actions. Can you address that? Yes. If this court decides that the delegation clause is not applicable, it will need to decide whether Midland waived its right to arbitrate. And appellees rely heavily on the recent decision, published decision from this court, Midland Funding v. Hilliker. And the reason why Midland v. Hilliker is not dispositive in this circumstance is a few reasons. And the reason why Midland didn't waive its right to arbitrate in this case. The first being is what the Hilliker court recognized as basically the rule of waiver. And the rule of waiver in the arbitration context is if you act inconsistently with that right to arbitration, then you will be deemed at waive. And that right to arbitration is the arbitration clause in your agreement, if you act inconsistently with that agreement. And here Midland didn't act inconsistently with its agreement. It didn't act inconsistently because there is a provision in its agreement that says, in a debt collection action, shall be filed first in state court unless the parties raise, unless defendant raises additional claims. And then at that point, Midland would have the option to determine whether to initiate arbitration or compel arbitration. So Midland didn't act inconsistently with its right to arbitrate by filing a debt collection action in state court. It was expressly allowed to do so under the terms of its agreement. And that is unlike the Hilliker case previously decided by this court, because in Hilliker there wasn't such a provision. This case involves a Citibank agreement while Hilliker involved a Chase agreement. The other reason why there isn't waiver is because the activities that Midland engaged in are not inconsistent with arbitration and does not rise to the level of substantial participation in the litigation. Midland filed its motion to compel arbitration as its first response of pleading to the original counterclaim of Ms. Darnell and Ms. Rainey. It did so five months thereafter, four to five months thereafter. And in that time period, the only activities that Midland engaged in were filing a motion for extension of time to answer and also a motion to strike a judge. Had Midland not engaged in those activities, we would have lost the right to do so. So we were not taking advantage of any particular issues of the court or submitting arbitrable issues to the court during that time period before we filed our motion to compel arbitration. The circuit court and appellees claimed that during that five-month period, we engaged in discovery, we participated in depositions, and we filed discovery motions, like a motion for protective order. All of those activities occurred after we filed our motion to compel arbitration. And that's significant. The only reason we engaged in those activities was to respond to discovery and a motion for protective order was to protect our rights, because defendants determined that they needed discovery in order to respond to our motion to dismiss, which the court allowed, despite our objection. So therefore, our activities before the motion to compel arbitration is what this court should look at. And in that sense, the only thing that we did was file a debt collection action that is not contrary to the arbitration agreement in this case. The activities after the motion to compel arbitration should not be counted against Midland either as a waiver of arbitration, because we were merely responding. And when you see cases like Kohler v. Packard Group, the court recognizes that responding to discovery, because you have to under the rules or pursuant to a court order, is not enough to rise to the level of waiver. So when the circuit court relied on the discovery activities by saying that they occurred prior to our motion to compel arbitration, that's a clear error of the facts that also would require this court to reverse its decision. And finally, even if this court finds that there is a waiver of arbitration, Midland revived that right to arbitration when Ms. Darnell and Ms. Rainey filed their counterclaims. Their counterclaims introduced new issues to the case and introduced a statewide and a nationwide class action. Counsel, wasn't that similar to the Hilliker case when the same thing happened? That did happen in the Hilliker case. But the difference between the Hilliker case is that the Hilliker case involved several counterclaims. So there was an original counterclaim. Midland didn't file a motion to compel arbitration. There was an amended counterclaim. Midland didn't file a motion to compel arbitration. It wasn't only until the third amended counterclaim, which is the one that added nationwide and statewide class claims, was it then that Midland filed a motion to compel arbitration. And what Hilliker holds is that because there was similarity between the original counterclaim and then the third amended counterclaim, Midland couldn't argue that it wasn't aware that these new issues could arise. Because the issues in the original counterclaim were similar enough to the third amended counterclaim. And here, since there was no original counterclaim, we weren't aware that we had no way of knowing what Ms. Darnell and Ms. Rainey were going to state with regard to our debt collection practices. We had no idea they were going to accuse us of FDTPA violations or Illinois Collection Agency Act violations or Illinois Consumer Fraud Act. That's far beyond what our debt collection action was intended to do. So it is different from Hilliker in that regard. And because of those, and the other reasons how this case is distinct from Hilliker is because Hilliker, after each counterclaim in that case, Midland filed a motion to dismiss. It filed a motion to dismiss the original counterclaim. It filed a motion to dismiss the amended counterclaim. We did not file a motion to dismiss in this case prior to filing the motion to compel arbitration. In fact, we haven't filed a motion to dismiss at all in this case. So to the extent that the court decided, to the extent that the motion to dismiss in Hilliker, the motion to dismiss was one of the issues that rose to the level of waiver in that case. And that doesn't exist in this case. And also, there was a long passage of time there. There was 18 months. Here, we only have four to five months in both cases. If there are no further questions, I'll reserve whatever remaining time I have. And we would ask that the court reverse the decision of the circuit court with regard to denying the motion to compel arbitration and striking the exhibits. Thank you. Counsel? Good afternoon, and may it please the court. Your Honors, my name is Sean Cronin. I represent the defendants, Ms. Rainey and Ms. Darnell, in this matter. I'm here to ask that you affirm the order of the circuit court denying Midland's motion to compel arbitration and dismiss the case. It's really important that I represent the defendants. And, Your Honor, you were asking a lot of questions about Hilliker and about the waiver issue. I just want to comment on that initially. Midland really likes to gloss over that they're the ones that filed the lawsuit against my clients. They are the plaintiffs. They filed the debt collection lawsuit against my clients. And, by the way, Midland knows everything there is to know about filing debt collection lawsuits because that is their business. They are a professional debt collection conglomerate. They file tens of thousands of debt collection cases across the country. They have filed tens of thousands of debt collection cases in Illinois against Illinois citizens. They have a department dedicated to dealing with counterclaims with regard to consumer protection statutes regarding debt collection. So when they pretend that they couldn't anticipate that someone would file a counterclaim with regard to, for example, the Illinois Collection Agency Act or the Illinois Consumer Fraud Act or the U.S. Fair Debt Collection Practices Act, that is disingenuous to say the least. They hold a department dedicated to doing that. So to say that they can't anticipate that, it's not foreseeable, and that it changes the whole nature of a litigation that they filed to collect a debt, I think should fall on deaf ears, and I think the Hilliker case supports that position. But moving on, that wasn't the court's only basis for denying the motion to compel arbitration. I think more importantly, the court had numerous evidentiary reasons for denying that. After they filed their lawsuits, Ms. Rainey and Ms. Darnell had to hire counsel to answer the complaint. They utilized the power of the court to serve someone and compel them to appear. If they didn't appear, they would have got a default judgment against them, which I would smith is exactly what Midland's business is. They're in the business of taking bad paper and turning it into good judgments so that they can clean up people's property and garnish their wages. When that didn't happen and you come in and defend it and file a counterclaim, they don't want to be in court anymore. They want to run away and hide behind an arbitration clause that, in this case, was not filed with the original complaint. The Civil Practice Act in Illinois requires that if you're going to file a breach of contract complaint, you have to attach the written contract to the complaint. They conveniently didn't do that here. The same contract they're trying to hide behind now for the arbitration clause. My client wasn't aware of it and, in fact, signed an affidavit saying she's never seen this contract. She doesn't know anything about it. Suddenly, once you file a counterclaim, I mean like a rabbit out of a hat, they find a credit card contract you didn't know about that has an arbitration clause that covers exactly what they wanted to cover, and they don't want to be in the form that they chose in the first place. So they file this credit card agreement, and they file another affidavit so that someone can try to lay a foundation for that credit card agreement. That guy's name was Michael Berger. We asked to take his deposition so that his testimony wouldn't go unrebutted. They moved to quash that because they didn't want us to ask Mr. Berger any questions about the things he said in his affidavit, and if you read the record in our brief, you'll see exactly why they wouldn't want us to ask him any questions about the things he said under oath in that affidavit. We deposed him for hours. There's extensive testimony from Mr. Berger. Counsel was present. He was under oath. All of that testimony was submitted to Judge Kolker at the hearing we had on the motion to compel arbitration and dismiss. He said he considered all of it, and then we had oral argument between the parties about issues of facts and law. That is an evidentiary hearing. Judge Kolker is the one that allowed us to go take the testimony. We didn't just take his testimony. We took two other Midland defendants, and, by the way, Midland came and took the deposition testimony under oath of our clients. So those five witnesses, the judge had all of that testimony. He considered it. So to suggest that this wasn't an evidentiary hearing so that they can shift the standard of review from what it is, which is an abuse of discretion standard because these are evidentiary rulings, to a de novo standard, I think is really misrepresenting what the law says and what an evidentiary hearing is. And if you look at Judge Kolker's order, he says, I considered all the testimony under oath in making my decision. The evidentiary findings he made were that Mr. Berger's testimony was not credible with regard to laying a foundation for the credit card agreement. He also said, because that's not credible, there is no foundation for the credit card agreement. It is hearsay, which no one's disputing, which is why they need the business records exception to try to overcome the fact that it's hearsay. He also ruled they didn't satisfy the hearsay exception. They didn't lay the proper foundational requirements to satisfy the business records exception to the hearsay rule. Beyond all that, even if it did come in as a business record, he held that it's irrelevant. And the reason, Your Honors, that it's irrelevant is because it doesn't have my client's names on it. It doesn't have a signature on it. It doesn't have an account number on it. There's nothing on that document that indicates that it is a contract that covers the debt that my client supposedly used to owe to Citibank before Midland bought it. They have introduced no evidence that my client ever saw it or received it. Mr. Berger said, I have no idea if they ever got it or saw it. I have no idea who created it. And I'll get more into that later. But that was the judge's other evidentiary ruling. This is just an unsigned contract that no one is actually saying applies to their credit card accounts. And by the way, this contract, the form that it is, is dated 2010. My client's credit cards were issued in, like, 1987 and sometime in the 90s. So suddenly there's a credit card contract from 2010, no evidence that it applies to them, but, God, it's got to apply to them because it's the one with the arbitration clause, because that's when we started putting those in there. So those were his evidentiary rulings. And then, finally, and those are all independent of each other, and each one of those you could uphold his order with regard to. And finally, the waiver issue that you addressed a lot when counsel was giving her presentation. With regard to the standard review, it is black-letter law that evidentiary rulings are abuse of discretion. I think I just covered that. Decisions to admit or exclude evidence rest with the sound discretion of the circuit court. That's all that happened here. There was a document. There's no foundation for it. The testimony proffered to provide foundation failed to do so. And Judge Coker said, I will not admit that as evidence because you haven't laid a foundation for it. It's hearsay. You haven't proved it's a business record to overcome the hearsay rule. And I find it to be irrelevant regardless. I would submit that not only did he not abuse his discretion in refusing to admit that document, it would have been an abuse of discretion had he admitted it. And we'd be here swishing around, frankly. So the deposition testimony of Mr. Berger was, frankly, shocking in how much it was inconsistent with his affidavit. Mr. Berger works for a company called Midland Credit Management. The plaintiff here is Midland Funding. He says that Midland Credit Management is the servicer for Midland Funding, and that is what gives him knowledge of Midland Funding's documents.  He doesn't know if they're servicers for Midland Funding. He doesn't know whether there's a servicer agreement, and he doesn't know what it says, and he's never seen it. That's the first thing he says that makes him confident to testify about documents, and we have no evidence of that whatsoever. The second thing is, all of these documents purportedly came from Citibank. The Citibank contract says Citibank on it. To lay a business record, to establish a foundation for the business record's exception to the hearsay rule, you have to say, I know that this document was made in the regular course of business, I know who made it, I know why they made it, and I know that it was made at or about the time of the things that happened that it documents. He doesn't know any of that stuff. He explicitly testified, I do not know who made this. I do not know when it was made. I do not know why they made it. I don't even know how Midland got it. He said the words believe a lot in his testimony. Well, I believe that Citibank sent it to Midland Funding. Oh, wait, actually, I think we got it from a company called Convoke. I don't even know what that is. But he said, oh, I think that they handle document transfers between Citibank when we buy debts, and it might have went through them, and then it might have went to Midland Funding, and now I work for Midland Credit Management, and it's in my file, and so now I can say this is a business record of Midland Funding. But I don't know when Citibank made it, when or how they transferred it to Convoke, when or how Convoke took possession of it, when or how Convoke transferred it to Midland Funding, when or how Midland Funding received it. Who did any of these things? I don't even know how it got in my computer file, but I recognize that document because it was on my computer in a file that says Theresa Rainey and Darnell. So that is literally his basis. That's his foundation for this document. He says it lays a regular foundation, which is, here's what this document is, and I can authenticate that it's real and true and accurate, and the additional foundation requirements for the business records, etc., which are, I know about documents in this business, I am the custodian of records for this business, and I know why it was created, when it was created, and it documents business things that happened at that time. Only someone from Citibank could possibly do that. And then you would need a chain of records from Citibank to Convoke to Midland. He doesn't know any of that stuff. Now on top of all that, do you know if this is the contract that governs the accounts of Ms. Rainey and Ms. Darnell? And his answer is no. That's his testimony. He cited it directly in our brief. He does not know that. He suspects that it applies to their accounts, because again, he found it in a computer file that says Teresa Rainey and Ms. Darnell on it. And so, well, it must be theirs, because someone put it there, but he doesn't know who put it there. I could have put it there. Their argument about this incorporated business records concept, first of all, it's not a rule in Illinois. That's not true. There is just the business records exception. It's Rule 236. And there's also the Illinois Rules of Evidence 803, 6, and 7. They explicitly state what the requirements are for the business records exception of the hearsay rule. There is no incorporated business records rule. That's not a thing. She cites a few cases like Bank of America v. Land, where the court did say, look, a third party who acquires the business records from another business and incorporates it to theirs was able to testify and meet those foundational requirements. It's meaningless here. I'm sure it is possible for someone to know the things you need to know to lay a proper foundation for a document that was once created by someone else and is now in your possession. That didn't happen here, though. And there's no broad exception that says, well, if you just find some documents and put them in your records, then suddenly you're okay. This is going to sound like hyperbole, but it's not. That is literally like saying, well, I found these in a dumpster, but now I have put them in my file cabinet in my business. And I put it in the file for Ms. Darnell. And then Mr. Berger would pick that out and say, this is the contract that applies to that. And I'm saying that under oath as the keeper of these records. Where did it come from? I don't know. Who put it there? I don't know. It could have been someone who put it there because they found it in a dumpster. That is literally the repercussions of what they proposed to be the rule. They are not asking you to enforce the law. They're asking you to dramatically change it with regard to ancient rules of evidence and establishment of foundation. And I strongly urge the court not to do that and understand that Judge Coker did exactly what he's supposed to do. He considered credibility issues. He read the testimony with regard to whether or not they established the foundation. And he didn't allow a document to be admitted into evidence that no one knows who made it or where it comes from or whether it applies to this case in any way whatsoever. He had no choice but to exclude that document. Again, the contract itself, assuming it would have came in as a business record, which it should not, the contract itself is completely irrelevant to these proceedings. It has nothing to do with the clients and nobody has said that it does. They keep saying, she'll tell you again, she's going to come in and say it came from Citibank and it applies to these debts that we bought. And we know that because Citibank gives us the documents. That is not establishing foundation. There are two Citibank documents that are attached to the briefs. One is called a bill of sale. Counsel referenced the bill of sale. The bill of sale itself, which I think she thinks is helpful to create a foundation for the contract, it itself contains no information about my clients or their accounts. It just says, I'm a person from Citibank and I sold some stuff to Midland Funding. I sold some accounts. It doesn't say that that bill of sale is with regard to the accounts of my clients or that they ever existed in the first place. And Mr. Berger again testified, I don't know anything about that document. I don't know who created it. I don't know when we got it. And I do not know that that bill of sale covers the accounts of Ms. Rainey and Ms. Darnell. He doesn't know that. And that is why Judge Coker struck it. The other one is called an affidavit of sale. That affidavit of sale, by the way, the bill of sale is not an affidavit or a statement under oath in any way. So the only way to lay a foundation for it was Mr. Berger who could not do so. The affidavit of sale from Citibank is substantially the same. It says, I say under oath that we sold some accounts to Citibank. But it doesn't say it sold Rainey and Darnell's accounts to Citibank. And Mr. Berger doesn't know who that affidavit is. He doesn't know her signature. He doesn't know if she worked for Citibank. He doesn't know if they got that document from Citibank. Nobody knows anything about it. And again, just like the credit card contract and the bill of sale, it is on its face irrelevant to Ms. Darnell and Ms. Rainey and no one can testify that that document actually applies to their accounts. And there really is no dispute about that. I'd also point out with regard to burdens, when a document is hearsay and they're trying to invoke an exception, that is their burden to prove. I think they want the court to think that the business records exception is a presumption. That because you're a business and you have a record in your hand, there's a presumption that it comes into evidence. And that is not the case. It is presumptively hearsay. And there is an exception that is your burden to prove the elements of. And as I've set forth, I think in probably beating a dead horse, they have not done so. So after the full hearing, the court decided Berger's testimony was not credible with regard to those three documents because it simply isn't. He doesn't know what they are or that they apply to the case. There's no foundation for them, accordingly. And so they can't come in as evidence. In addition, he ruled that there was no evidence whatsoever introduced with regard to the computer systems or how any of these documents were transferred or kept or maintained or created, which is a requirement when documents are computer generated. That's a foundational requirement for them. So there's no hearsay exception. There's no basic foundation. There's no credible testimony about them at all. And they are not relevant because they don't have anything to do with Teresa Rainey and Ms. Darnell. I would ask the court to look at, they're in our brief, but these two particular cases are really strong. They're almost exactly on point. Asset acceptance versus Tyler is an identical scenario where a third party is trying to lay a foundation for records they got from someone else in a debt collection context. It is exactly on point and supports our position. Web versus Midland funding, again, Midland, you see that a lot of these cases have Midland in them because they are the biggest debt-buying debt collector in the country. I think that the court can very easily affirm the order of the circuit court with regard to the evidentiary issues. And because it's an abuse of discretion, I don't think a whole lot of effort has to go into reviewing everything. The court did its job. It did it well. It's well, well documented. And this court should defer, I think, to the evidentiary rulings of the circuit judge. But moving on. The judge also ruled with regard to waiver, and I do think Hilliker is exactly on point and applicable here. And I think you could equally affirm on the waiver issue. Midland came in here and filed a lawsuit against an Illinois citizen as they do to tens of thousands of them. And when we wanted to file a counterclaim with regard to consumer protection statutes, they wanted to say, we don't want to be here anymore. We did want to be here when we wanted to get a judgment against you and use it to collect money from you, as we do to many, many people. But if you want to enforce your rights that the Illinois legislator put in place to protect you from people like us, that's exactly what the Illinois Collection Agency Act is designed to do. Protect Illinois citizens from people like Midland. So when you want to file a counterclaim against us for that act that's designed to protect you from exactly what we're doing, we don't want to be here anymore. Now we'd like to go arbitrate. We're sorry. We changed our mind. And that goes to the essence of waiver. Counsel said that Hillary is distinguishable because there was a little bit of extra litigation between the time that they filed their complaint and the defendant amended their counterclaim to add a class claim. I would say that's a distinction without meaning here. I don't know what the difference is between class claims and a regular counterclaim except for there's more exposure for Midland. But that doesn't fundamentally change the nature of the litigation. The counterclaim is the exact same subject matter and area of law as the underlying claim. It's debt collection. You should expect to face counterclaims about consumer protection statutes regarding debt collection. It doesn't matter if it's a class claim or just a regular counterclaim. It's not as if our counterclaim fundamentally changed the nature of the litigation. We didn't come in and file like an auto wreck case and say, well, somebody that used to work for Midland got in a car accident. The only case they've cited, from my reading of their briefs, that is like that, where the person now seeking arbitration is actually the person that filed the case, is called Liberty. I can't remember the rest of the site. I'm sorry, but it is in their brief. And in Liberty, they had filed a summary action for limited relief, a replevin action, and somebody came in and filed a counterclaim that was like an eight count counterclaim seeking damages and injunction, and it was completely different. And that is the only case they've cited where the plaintiff who filed the lawsuit in the first place now wants to get out and arbitrate. And I think that's completely distinguishable. So we would ask that you affirm the order of the lower court. It is an abuse of discretion standard. It's evidentiary rulings. There are four separate bases for evidentiary rulings. Each one of them independently is enough to affirm the court's order. And we think waiver is equally as compelling, even if the standard might be higher, and that Hilliker is exactly relevant. It was just issued by this court in 2016. Not only was Midland the party, counsel was actually counsel on that case. I don't think she made a compelling argument that that is distinguishable at all. I think it's exactly like this case. Thank you very much for your time. If you have any other questions otherwise. I don't think we do. Thank you. Thank you. Counsel spoke a lot about Mr. Berger. You heard a lot about Mr. Berger. But what it comes down to here is that Mr. Berger, just like any custodian of records, is the director of operations at Midland, familiar with the process of receiving documents from third parties such as Citibank and the like. To establish that, you need a bill of sale, an affidavit of sale, account statements. We provided those documents, or he was provided those documents from Citibank in a form of an Excel spreadsheet that is associated with the bill of sale. That Excel spreadsheet was attached to Mr. Berger's supplemental declaration in this case and is part of the record. It did not drop out of thin air. Citibank substantiated that we purchased that account, and they own that account. And it's subject to the account statements and card member agreements that are associated with that account. Citibank and Midland all have to monitor what agreements apply to their accounts. And that's what Citibank provided us, or Midland. And that's what Mr. Berger received and declared was a business record from Citibank that it incorporated into its record to rely on. We've heard nothing from Plaintiff that they didn't have a card agreement. In fact, she said they've had a card agreement for years before the 2010 modification. And this agreement didn't drop out of thin air. How do we know it didn't drop out of thin air? It's because we produced an account statement that's also attached to Mr. Berger's supplemental declaration that says we are changing the terms and conditions of your agreement. There's a notice advising you of these changes, including the arbitration clause. It is enclosed herein. That matches the card member agreement that we were provided from Citibank. So to say that it fell out of thin air is simply not true. And to suggest that Ms. Darnell and Ms. Rainey never saw the card agreement is an overstatement at best. Because at their deposition, they both realized that they couldn't recall because sometimes their spouses would get the mail. Or sometimes they wouldn't see everything because their spouses would get it. There was no assurance that they truly had never seen the card agreement that's applicable to this case. And with regard to that card agreement... Was there any evidence or testimony that they in fact did? That they in fact what? Did see the card agreement. Well, we sent account statements. The account statements to Ms. Rainey in the supplemental declaration says that we are changing the arbitration agreement. And it is enclosed, the notice to opt out of these changes. And that matches with the card member agreement that we were provided from Citibank. So that is evidence that shows that the card agreement matches what applies to Ms. Rainey's account. Well, I think Justice Barbera's question focused specifically on the agreement not subsequent actions on the account that allegedly was created by such agreement. Is there anything in the record from either of these people indicating that they saw the actual agreement? No, there's not. I would raise the fact that that's not the standard in Illinois. The standard in Illinois is that they used the card after they received the modified terms and conditions. Now, whether they remember seeing it or not, I don't know. I don't have direct evidence that they saw it. There's nothing in the record indicating that they saw the agreement. Is there anything in the record indicating they were sent the agreement? Right, we have the account statement that's attached to Mr. Berger's supplemental declaration that says that in November 2010 she was notified of the changes to the card member agreement which included a change to the arbitration provision and there was a notice to opt out of those changes. So the statement was in a subsequent statement of account, is that correct? No, it was before the terms and conditions took effect. There was an account statement sent to her with the changes. So it was part of an account statement? Yes, as part of the mailing of that account statement, yes. All right, without that I close. Thank you. Thank you. We appreciate the briefs and arguments of both counsels to take the case under advice.